

**ORDERED in the Southern District of Florida on August 30, 2019.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                                    Case No. 18-17091-EPK

RYAN DUNN,                                          Chapter 7

      Debtor.

_____/

MICHAEL R. BAKST,
Chapter 7 Trustee,

      Plaintiff,

v.                                                              Adv. Proc. No. 18-01371-EPK

RYAN DUNN,

      Defendant.

_____/

### <u>MEMORANDUM OPINION</u>

      The Court held a trial in this adversary proceeding on May 28, 2019 on the Amended Complaint [ECF No. 19] filed by Michael R. Bakst, as chapter 7 trustee (the "Trustee"), against Ryan Dunn (the "Debtor"). Prior to trial, the Trustee and the Debtor filed the Joint Stipulation of Facts. ECF No. 29. At trial, the Court received testimony of the Debtor and

documentary evidence.  After trial, the Court directed the parties to file post-trial briefs in the form of proposed findings of fact with citations to evidence admitted at trial.  ECF No. 34.  Both parties filed post-trial briefs.  ECF Nos. 44 and 49.  The Court has carefully reviewed the Joint Stipulation of Facts and the evidence cited by the parties in their post-trial briefs, and relies exclusively on such evidence in this memorandum opinion.[1]

In this adversary proceeding, the Trustee seeks denial of the Debtor's discharge in his chapter 7 case under several provisions of section[2] 727.  The Amended Complaint presents six counts: Count I under section 727(a)(2)(A); Count II under section 727(a)(2)(B); Count III under section 727(a)(3); Count IV under section 727(a)(4)(A); Count V under section 727(a)(5); and Count VI under section 727(a)(4)(D).

Because the purpose of bankruptcy is to provide honest but unfortunate debtors a fresh start, "objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor."  *Menotte v. Davis (In re Davis)*, 363 B.R. 614, 619 (Bankr. M.D. Fla. 2006) (citations omitted); *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1338-39 (11th Cir. 2008).  The Trustee has the burden of proof on all counts by a preponderance of the evidence.  *In re Jennings*, 533 F.3d at 1339 (quoting *Grogan v. Garner*, 498 U.S. 279 (1991)).

## **Findings of Fact**[3]

Since 1991, the Debtor was the sole owner, officer, and director of R&D Bus Company, Inc. ("R&D").  R&D operated a successful charter school bus transportation business for many years, owning as many as one hundred school buses at its peak.  R&D's largest client was the

---

[1] In its order requiring post-trial briefs, ECF No. 34, the Court advised the parties that failure to cite to the record for any proposed finding of fact would result in waiver of the right to rely on the proposed finding of fact.

[2] Unless otherwise noted, the word section or sections refers to the stated section or sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

[3] Prior to trial, the parties filed the Joint Stipulation of Facts.  ECF No. 41.  The Court includes, without distinction, relevant stipulated facts in its Findings of Fact.

Chicago public school system.  Around 2015, R&D began experiencing financial troubles resulting from the purchase of a number of new buses unfortunately coupled with the Chicago public school system reducing the number of buses under its contract with R&D.  In 2016, R&D defaulted on a $1.35 million debt to one its largest creditors, Signature Financial LLC. The Debtor had personally guaranteed the debt to Signature Financial LLC.  R&D ceased operations in January 2018 and filed its own chapter 7 bankruptcy petition in February 2018.

On December 12, 2017, Signature Financial LLC obtained a judgment against the Debtor, as guarantor of the R&D liability, in the amount of $1.35 million.

At all times relevant to this matter, R&D provided the Debtor's sole source of income. The Debtor's salary from R&D ranged from $52,000.00 per year to $400,000.00 per year, depending on whether R&D directly paid the Debtor's personal expenses.

Around January 2018, when R&D ceased operations, the Debtor had set aside between $30,000.00 and $40,000.00 in cash at his home.  The Debtor testified that he used this cash to pay child support obligations, his step-daughter's college tuition and expenses, his mother's living and medical expenses, and maintenance on the Debtor's homestead property located at 12161 Boca Reserve Lane, Boca Raton, FL 33428 (the "Boca Property"). The Debtor did not provide any documentation for these payments.

On June 13, 2018, the Debtor filed a voluntary chapter 7 petition.  ECF No. 1; Case No. 18-17091.  The Debtor did not immediately file his schedules, statement of financial affairs, or other information required under section 521(a).  Several weeks later, on July 6, 2018, the Debtor filed his initial schedules, statement of financial affairs, payment advices, and statement of current monthly income.  ECF Nos. 12, 13, and 14; Case No. 18-17091.

In his initial schedules and statement of financial affairs, the Debtor did not disclose certain required information related to his assets, finances, and business affairs, including: (a) the December 2017 transfer of the Boca Property from C.R.M. Group of Florida, LLC

("CRM"), an entity controlled by the Debtor, to the Debtor individually; (b) the immediate subsequent transfer of the Boca Property from the Debtor individually to the Ryan Dunn Revocable Trust; (c) the August 2017 sale of real property located at 1830 Yale Road, Flossmoor, Illinois 60422 (the "Flossmoor Property"); (d) the ownership of a 2011 Jeep Wrangler Sahara (the "Jeep"); (e) the October 2017 sale of the Jeep to Henry Genes, Jr., the brother-in-law of the Debtor's ex-girlfriend; (e) the receipt of $16,000.00 in cash in exchange for the Jeep between August 2017 and October 2017; and (f) the Debtor's right to an inheritance from his father's probate estate.

On July 13, 2018, the Trustee noticed a rule 2004 examination *duces tecum* of the Debtor, requesting that the Debtor produce certain documents at an examination under oath to be held on August 14, 2018.  ECF No. 22, Case No. 18-17091.

On September 17, 2018, the Trustee commenced this adversary proceeding.  As of that date, the Debtor had failed to provide the documents requested in the Trustee's notice of rule 2004 examination *duces tecum* served more than two months prior.

On November 29, 2018, two months after the Trustee filed the complaint, the Debtor filed a second amended statement of financial affairs.  ECF No. 148, Case No. 18-17091.  The Debtor's second amended statement of financial affairs disclosed, for the first time, the transfer of the Boca Property to the Ryan Dunn Revocable Trust for no consideration.  *Id*.  At trial, the Trustee questioned the Debtor about the transfer of the Boca Property from CRM to the Debtor followed by the immediate transfer of the Boca Property from the Debtor to the Ryan Dunn Revocable Trust.  Both transfers occurred on December 29, 2017, after Signature Financial LLC obtained a $1.35 million judgment against the Debtor.  The Debtor testified that his accountant advised him to transfer the Boca Property to the Ryan Dunn Revocable Trust "to protect the home."

The Debtor's second amended statement of financial affairs also disclosed, for the first time, the August 2017 sale of the Flossmoor Property.  In the second amended statement of financial affairs, the Debtor stated that he received "no net proceeds" and that the mortgagee "BMO Harris [was] paid $409,672.43" from the sale of the Flossmoor Property.[4]  At trial, the Debtor testified that his initial failure to disclose the sale of the Flossmoor Property was an oversight on the part of his former counsel.  The Debtor testified that, after the filing of his bankruptcy case, the Debtor provided his former counsel with documents relating to the sale of the Flossmoor Property.

Also on November 29, 2018, the Debtor filed amended schedules.  ECF No. 150, Case No. 18-17091.  The Debtor's amended schedule A/B disclosed, for the first time, the Debtor's right to an inheritance from his father's probate estate, which includes a 1/8 interest in certain real property and cash in the amount of $11,000.00.  *Id*.  The Debtor listed the value of the inheritance as unknown.  *Id*.

On December 5, 2018, almost three months after the Trustee filed the complaint, the Debtor filed a third amended statement of financial affairs.  ECF No. 154, Case No. 18-17091.  The Debtor's third amended statement of financial affairs disclosed, for the first time, the October 2017 sale of the Jeep to Mr. Genes for $16,000.00.  *Id*.  The Debtor inaccurately identified Mr. Genes as the Debtor's "brother."  *Id*.  The Trustee argues that it is unclear whether the Debtor in fact transferred the Jeep or received $16,000.00 in exchange for the Jeep.  In response to the Trustee's discovery request, the Debtor did not produce any documentation evidencing the transfer of the Jeep or the receipt of $16,000.00 in cash in exchange for the Jeep.  The Debtor eventually produced a bill of sale for the transfer of the Jeep to Mr. Genes, and four receipts for payments aggregating the total purchase price of

---

[4] In his post-trial brief, the Debtor states, without citation to the record, that he received $543.08 from the sale of the Flossmoor Property.  The evidence admitted in this case does not corroborate that statement.

$16,000.00. At trial, when questioned about the failure to previously disclose the sale of the Jeep, the Debtor testified that he had owned many cars over the years and that he had not remembered the sale of the Jeep. The Debtor testified that he believed he had sold the Jeep to Mr. Genes three or four years prior to filing his bankruptcy petition. This is in spite of the fact that the Debtor claims to have sold the Jeep only eight months prior to filing his bankruptcy, at a time when $16,000.00 would have been a significant addition to his available cash. Regarding the disposition of the $16,000.00 in cash, the Debtor testified that he kept some of the money for himself and used the remainder to pay his child support obligations, his step-daughter's college expenses, and his mother's bills. The Debtor did not provide any documentation for these payments.

At trial, the Trustee questioned the Debtor about a $22,500.00 deposit made on October 14, 2016 into the Debtor's personal Chase bank account. The Debtor was unable to recall the source of the $22,500.00 deposit but believed it was a payment from R&D. The Debtor did not provide any documentation to support this statement.

At some point, the Debtor's personal bank accounts at U.S. Bank and Chase, each located in Chicago, were frozen as a result of Signature Financial LLC's collection efforts against the Debtor. The Debtor has no personal bank accounts in Florida.

In February 2018, the Debtor caused CRM to open a bank account in Florida, despite CRM never operating a business or filing a tax return. The Debtor testified that there was "no special reason" for opening the CRM bank account. In April 2018, the Debtor deposited $7,000.00 in cash in the CRM bank account. According to the Debtor, this deposit consisted of monies that the Debtor had saved and monies that he had around the house. The Debtor testified that there was "no special reason" for depositing his personal funds in the CRM bank account. On the day before filing his bankruptcy petition, the Debtor withdrew $5,450.00 from the CRM bank account. As of the petition date, the Debtor disclosed having $2,500.00

in cash on hand.  Schedule A/B, ECF No. 12, Case No. 18-17091.  The Debtor testified that the $2,950.00 difference was used to pay legal fees to his bankruptcy counsel or to pay maintenance on the Boca Property.  The Debtor provided no documentation for these payments.

In February 2018, the Debtor opened a bank account in Florida in the name of the Ryan Dunn Revocable Trust.  The Debtor deposited into that account $17,000.00 that the Debtor received from the sale of a 2015 Chevrolet Corvette.  The Debtor testified that he used this new account because his personal bank accounts in Chicago had been frozen and because the Corvette was sold in Florida.  The Debtor could not explain a subsequent $2,500.00 deposit into this bank account.  At trial, the Trustee questioned the Debtor about the disposition of $13,000.00 in cash withdrawals from this account.  The Debtor testified that he withdrew this cash to have money in his pocket and that perhaps some of this cash was used for a subsequent deposit of $11,950.00 to the same account in June 2018.  On the same date that the Debtor deposited the $11,950.00 into this account, the Debtor sent a wire transfer in the amount of $15,000.00 to his former counsel as a retainer.  Two months later, in August 2018, the Debtor sent another wire transfer in the amount of $5,000.00 from this account to his former counsel.

At trial, the Debtor produced, apparently for the first time, some but not all of the bank statements requested by the Trustee in the course of pre-trial discovery.  The statements were from the Debtor's personal U.S. Bank account.  These bank statements raised more questions than they answered.  The Debtor could not recall the recipients of multiple checks written on that account between August and October 2017 in the amounts of $2,500.00, $1,500.00, $1,400.00, $1,400.00, $700.00, $500.00, and $300.00.  The Debtor testified that some of those checks could have been made out to the Debtor himself, for cash.

At trial, the Trustee questioned the Debtor regarding his right to an inheritance from his father's probate estate.  The Debtor's father passed away in December 2008, without a will.  The Debtor testified that he first learned of his father's probate estate in 2017 or 2018.  At that time, the Debtor was unaware that he was entitled to an inheritance.  The Debtor testified that he first became aware of his right to an inheritance after the filing of his chapter 7 bankruptcy case from his attorney.  Although the Debtor eventually disclosed a right to a 1/8 interest in certain real property and an $11,000.00 distribution from his father's probate estate, the Debtor testified that he has not received any distribution from his father's probate estate.

### Count I: Section 727(a)(2)(A)

Pursuant to section 727(a)(2)(A), a debtor may be denied a discharge if the debtor, with intent to hinder, delay, or defraud a creditor or the chapter 7 trustee, "has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition."  To deny a debtor's discharge under section 727(a)(2)(A), the plaintiff must prove: (1) that the act complained of was done with actual, subjective intent to hinder, delay, or defraud a creditor; (2) that the act was that of the debtor; (3) that the act consisted of transferring, removing, destroying, mutilating, or concealing any of the debtor's property, or permitting any of these acts to be done; and (4) that the act was done within the one year before the petition date.  *In re Jennings*, 533 F.3d at 1339.

Although the required intent must be actual, subjective intent, it may be proven through circumstantial evidence or inferences drawn from a course of conduct.  *In re Jennings*, 533 F.3d at 1339 (citation omitted); *Bauman v. Post (In re Post)*, 347 B.R. 104, 109 (Bankr. M.D. Fla. 2006).  Because the statute reads in the disjunctive (hinder, delay, *or* defraud), the plaintiff need not prove fraudulent intent in order to prevail.  *In re Post*, 347

B.R. at 109. "[A] transfer or concealment made with the actual intent to hinder or delay a creditor is sufficient for denial of discharge, even if there is no actual fraudulent intent." *Id.* at 109-10 (citing *NCNB Texas Nat'l Bank v. Bowyer (In re Bowyer)*, 916 F.2d 1056, 1059 (5th Cir. 1990), *rev'd on other grounds*, 932 F.2d 1100 (5th Cir. 1991); *Crews v. First Colony Life Ins. Co. (In re Barker)*, 168 B.R. 773, 780 (Bankr. M.D. Fla. 1994)).

The Trustee alleges that the Debtor intended to hinder, delay, or defraud his creditors by: (a) transferring the Boca Property from a corporate entity controlled by the Debtor, to the Debtor, and then to the Ryan Dunn Revocable Trust, and concealing those transfers; (b) concealing the Debtor's right to an inheritance from his father's probate estate; (c) transferring the Flossmoor Property and concealing that transfer; (d) transferring the Debtor's personal funds into the bank accounts of the Ryan Dunn Revocable Trust and CRM, and concealing those transfers; (e) concealing the proceeds of the Debtor's 2015 Chevrolet Corvette in a bank account owned by the Ryan Dunn Revocable Trust; (f) transferring the Jeep and concealing that transfer; (g) concealing the receipt and disposition of $16,000.00 in cash that the Debtor allegedly received in exchange for the Jeep; (h) concealing the receipt and disposition of between $30,000.00 and $40,000.00 that the Debtor paid to himself from R&D in January 2018; and (i) concealing the disposition of $5,450.00 withdrawn from the CRM bank account the day prior to the petition date. Each of these was within the year prior to the commencement of this bankruptcy case.

Considering all the evidence admitted in this matter, the Court concludes that the Debtor actually intended to hinder and to delay his creditors by transferring the Boca Property from a corporate entity controlled by the Debtor, to the Debtor, and then to the Ryan Dunn Revocable Trust. Both transfers occurred on December 29, 2017, shortly after Signature Financial LLC obtained a $1.35 million judgment against the Debtor as guarantor of an R&D liability. The Debtor testified that his accountant advised him to transfer the

Boca Property to the Ryan Dunn Revocable Trust "to protect the home." Thus, the Debtor admitted that he intended to transfer the home in order to shield it from his creditors. In addition, the Debtor concealed these transfers by failing to disclose them in his initial filings.

The Debtor also intended to hinder and to delay his creditors by opening bank accounts in the names of CRM and the Ryan Dunn Revocable Trust and using those accounts for his personal business. Signature Financial LLC obtained a $1.35 million judgment against the Debtor. Signature Financial LLC garnished the Debtor's personal bank accounts in Chicago. The Debtor did not have any personal bank accounts in Florida. Thereafter, the Debtor caused CRM to open a bank account in Florida, despite CRM never operating a business or filing a tax return. The Debtor testified that there was "no special reason" for opening the CRM bank account. The Debtor also opened a bank account in the name of the Ryan Dunn Revocable trust. The Debtor used both the CRM and Ryan Dunn Revocable Trust bank accounts to manage his own personal funds, and then concealed that use, with the intent to hinder and to delay Signature Financial LLC's collection efforts.

The Debtor also intended to hinder and to delay his creditors by concealing the October 2017 sale of the Jeep and the receipt and disposition of $16,000.00 in cash that the Debtor received in exchange for the Jeep. The Debtor testified that he had owned many cars throughout the years and that he had forgotten that the sale of the Jeep to Mr. Genes had occurred the prior fall rather than several years before. Given the timing of the sale, and considering the Debtor's then cash position, this testimony was not credible.

The evidence admitted in this matter does not support denial of discharge in connection with the other allegations made by the Trustee in support of Count I.

For these reasons, the Debtor's discharge will be denied under section 727(a)(2)(A).

### Count II: Section 727(a)(2)(B)

In his post-trial brief, the Trustee waived his claim under section 727(a)(2)(B).

## **Count III: Section 727(a)(3)**

Pursuant to section 727(a)(3), a debtor may be denied a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained unless such act or failure to act was justified under all of the circumstances of the case." Section 727(a)(3) does not require proof of fraudulent intent. *Protos v. Silver (In re Protos)*, 322 Fed. Appx. 930, 935 (11th Cir. 2009).

The Trustee alleges that the Debtor failed to keep or preserve sufficient records related to certain deposits to and withdrawals from the Debtor's personal bank accounts and other bank accounts controlled by the Debtor. The Debtor failed to produce all bank statements requested by the Trustee. When examined about the bank statements he did produce, the Debtor was unable to recall the recipient or disposition of a number of large withdrawals and the source of a number of large deposits.

The Trustee also alleges that the Debtor failed to keep or preserve sufficient records related to the disposition of a large sum of cash. In January 2018, when R&D ceased operations, the Debtor set aside between $30,000.00 and $40,000.00 in cash at his home. The Debtor testified that he used this cash to pay child support obligations, his step-daughter's college tuition and expenses, his mother's living and medical expenses, and maintenance on the Boca Property. But the Debtor provided no documentation to support this testimony.

From August 2017 to October 2017, the Debtor received $16,000.00 in cash from the sale of the Jeep. The Debtor testified that he kept some of the money for himself and used the remainder to pay his child support obligations, his step-daughter's college expenses, and his mother's bills. But the Debtor provided no documentation to support this testimony.

Taking into account all of the circumstances of the Debtor in light of the evidence admitted in this case, and in particular the Debtor's pervasive inability to support his testimony with documentation, the Court finds that the Debtor failed to keep or preserve recorded information sufficient to ascertain the Debtor's financial condition or business transactions.  The Debtor's discharge will be denied under section 727(a)(3).  *Dzikowski v. Kirshner (In re Kirshner)*, 2007 Bankr. LEXIS 3779, at **15-16 (Bankr. S.D. Fla 2007) (denying a debtor's discharge under section 727(a)(3) when the debtor presents no documentation to support his testimony).

### Count IV: Section 727(a)(4)(A)

Pursuant to section 727(a)(4)(A), a debtor may be denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]"  Section 727(a)(4) requires both knowledge and actual fraudulent intent on the part of the debtor.

The false oath must be material.  *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991) (per curiam); *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam).  "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  *In re Chalik*, 748 F.2d at 618 (citations omitted).

A false oath may include a material omission.  *Id.*  In order to serve as a basis for denial of discharge under section 727(a)(4)(A), the omission must be made by the debtor knowingly and with fraudulent intent.  *Id.* ("Deliberate omissions by the debtor may also result in the denial of a discharge.").

A reckless disregard of a false oath or omission may rise to the level of fraudulent intent required to deny a discharge. *In re Post*, 347 B.R. at 112 (citing cases in support). On the other hand, a false oath or omission in a debtor's schedules or statement of financial affairs "resulting from the debtor's ignorance or carelessness is not one that is knowing and fraudulent." *Id* (citing *Carney v. Dupree (In re Dupree)*, 336 B.R. 506, 513 (Bankr. M.D. Fla. 2005)).

In preparing and filing schedules and other information required under section 521(a), "a debtor's reliance on the advice of counsel who is generally aware of all relevant facts also may excuse an inaccurate or false oath, because it indicates the absence of the necessary fraudulent intent." *Id*. (citing *In re Topper*, 229 F.2d 691, 693 (3d Cir. 1956); *In re Mascolo*, 505 F.2d 274, 277 (1st Cir. 1974)). "It may be that a debtor's description of the transaction caused his attorney to improperly analyze the transaction; but, absent evidence that the debtor attempted to mislead his counsel, the requisite intent cannot be inferred from the failure to disclose." *Id*. (citing *Estate of Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 787 (Bankr. E.D. Pa. 2004)). "A debtor's schedules need not be perfect. The issue is one of intent: are the omissions merely mistakes or the result of deliberate and purposeful intent?" *Id*.

The Trustee alleges that the Debtor knowingly and fraudulently failed to disclose the following in his initial schedules and statement of financial affairs:  (a) the December 2017 transfer of the Boca Property from a corporate entity controlled by the Debtor, to the Debtor, and then to the Ryan Dunn Revocable Trust; (b) the August 2017 sale of the Flossmoor Property; (c) the Debtor's right to an inheritance from his father's probate estate; (d) the ownership of the Jeep; (e) the alleged sale of the Jeep; (f) the receipt and disposition of $16,000.00 in cash in exchange for the Jeep; and (g) the disposition of $2,950.00 that the Debtor withdrew from the CRM bank account the day prior to filing the voluntary chapter 7 petition.

The Debtor does not deny that he failed to disclose these items. Rather, the Debtor argues that the omissions were not made with the requisite knowledge and fraudulent intent. The Debtor testified that he provided the relevant information to his former counsel and that he relied on the advice of his former counsel in preparing and filing his initial schedules and statement of financial affairs.

The Debtor did not offer testimony from his prior counsel to corroborate the Debtor's testimony on this point. The limited documentary evidence offered by the Debtor to show what he provided to his counsel did disclose information relating to the sale of the Flossmoor Property, but revealed nothing about the transfer of the Boca Property, the right to an inheritance from the Debtor's father, or the disposition of cash from the CRM bank account just prior to the filing of this case. The documentation the Debtor provided to his counsel reflects ownership of the Jeep but does not disclose its sale and provides no information as to what consideration was received for that sale.

The Court found credible the Debtor's testimony that he did not realize he might be entitled to an inheritance from his father's estate until after the Debtor had filed this case, at which point the Debtor added this item to his amended schedules.

Taking into account all of the evidence admitted in this case, the Debtor's failure to initially disclose each of the following facts constitutes a false oath: (a) the December 2017 transfer of the Boca Property from a corporate entity controlled by the Debtor, to the Debtor, and then to the Ryan Dunn Revocable Trust; (b) the alleged sale of the Jeep; (c) the receipt and disposition of $16,000.00 in cash in exchange for the Jeep; and (d) the disposition of $2,950.00 that the Debtor withdrew from the CRM bank account the day prior to filing the voluntary chapter 7 petition. For each of these reasons, the Debtor's discharge will be denied under section 727(a)(4)(A).

### Count V: Section 727(a)(5)

Pursuant to section 727(a)(5), a debtor may be denied a discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"  The determination of whether a particular explanation is satisfactory is left to the discretion of the Court. *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 472-73 (Bankr. N.D. Ill. 2007) (outlining the proper analysis); *In re Chalik*, 748 F.2d at 619. The Court may consider all relevant circumstances, including the materiality of any loss or deficiency in light of the facts of the case.  The focus of section 727(a)(5) is not on why the Debtor expended or dissipated assets or whether the disposition was proper.  "The Court need only decide whether the explanation satisfactorily describes what happened to the assets[.]" *Great Am. Ins. Co. v. Nye (In re Nye)*, 64 B.R. 759, 762 (Bankr. E.D.N.C. 1986).  "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory."  *In re Chalik*, 748 F.2d at 619.

The Trustee alleges that the Debtor failed to explain satisfactorily the source of several deposits into the Debtor's bank accounts and accounts controlled by the Debtor. Deposits into the Debtor's bank accounts are a gain in assets, not a loss or disposition of assets.  Such allegations do not support denial of a debtor's discharge under the plain language of section 727(a)(5).

The Trustee alleges that the Debtor failed to explain satisfactorily the disposition of between $30,000.00 and $40,000.00 in cash that the Debtor received from R&D in January 2018, less than six months before he filed this bankruptcy case.  The Debtor testified that he used this cash to pay child support obligations, his step-daughter's college tuition and expenses, his mother's living and medical expenses, and maintenance on the Boca Property. The Debtor did not provide any documentation for these payments to substantiate his testimony.

The Trustee alleges that the Debtor failed to explain satisfactorily the disposition of $16,000.00 that the Debtor received from the sale of the Jeep.  The Debtor testified that he kept some of the money for himself and used the remainder to pay his child support obligations, his step-daughter's college expenses, and his mother's bills.  The Debtor did not provide any documentation for these payments to substantiate his testimony.

The Trustee alleges that the Debtor failed to explain satisfactorily the disposition of $5,450.00 in cash that the Debtor withdrew from CRM's bank account on the day prior to filing this bankruptcy case.  The Debtor testified that the monies in the CRM bank account consisted of the Debtor's monies that he had saved or had around the house.  In his initial Schedule A/B, ECF No. 12, Case No. 18-17091, the Debtor disclosed that he had $2,500.00 in cash on the petition date.  At trial, the Debtor testified that the remaining $2,950.00 withdrawn from the CRM bank account was used to pay legal fees to his former bankruptcy counsel or to pay maintenance on the Boca Property.  The Debtor did not provide any documentation for these payments to substantiate his testimony.

The Trustee alleges that the Debtor failed to explain satisfactorily the disposition of $13,000.00 that the Debtor withdrew from the Ryan Dunn Revocable Trust bank account in the year prior to the filing of this case.  The Debtor previously deposited $17,000.00 from the sale of the Debtor's 2015 Chevrolet Corvette into this bank account.  The Debtor could not explain the disposition of the $13,000.00, other than to claim that perhaps some of these funds were used for a subsequent deposit of $11,950.00.

The Trustee alleges that the Debtor failed to explain satisfactorily the disposition of multiple checks written from the Debtor's U.S. Bank account between August and October 2017 in the amounts of $2,500.00, $1,500.00, $1,400.00, $1,400.00, $700.00, $500.00, and $300.00.  The Debtor testified that he did not recall the recipient or purpose of these checks.

The Debtor testified that some of the checks could have been made out to the Debtor himself, for cash.  The Debtor did not provide copies of these checks.

The Debtor provided no explanation for the loss or disposition of a number of significant assets in the year prior to, and in some cases soon before, his filing this case.  Even if the Court found the explanations that the Debtor gave to be credible, because the Debtor did not provide any documentation to substantiate his explanations the Court finds the Debtor's explanations to be fatally unsatisfactory.  *In re Chalik*, 748 F.2d at 619-20 (denial of discharge under section 727(a)(5) warranted when the debtor presents no documentation to support his or her testimony); *In re Kirshner*, 2007 Bankr. LEXIS 3779, at **15-16 (same).  For these reasons, the Debtor's discharge will be denied under section 727(a)(5).

### Count VI: Section 727(a)(4)(D)

In his post-trial brief, the Trustee waived his claim under section 727(a)(2)(D).

### Order

For the foregoing reasons, the Court ORDERS and ADJUDGES as follows:

1. The Debtor's discharge will be denied pursuant to each of 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5).

2. The Court will enter a separate judgment in favor of the Trustee consistent with this Memorandum Opinion.

### ###

Copies to:

All parties of record by the Clerk